Robert L. Herbst (RH 8851)
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
(646) 543-2354
rherbst@herbstlawny.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
A.D., a child, by her natural mother, J.D.,

                            Plaintiff,                       COMPLAINT

      -against-

                                                      JURY TRIAL DEMANDED

THE CITY OF NEW YORK, and
New York Police Lieutenant PAUL GAGLIO,         ECF CASE
individually and in his official capacity,

                            Defendants.
-------------------------------------------------------------------x

       Plaintiff A.D., a child by her mother and next friend, J.D., by their attorneys, HERBST LAW PLLC, as and for their complaint against defendants CITY OF NEW YORK ["CITY"] and Police Lieutenant PAUL GAGLIO ["GAGLIO"], allege as follows:

## INTRODUCTION

       1.     This is a civil rights action, seeking compensatory damages, punitive damages, and attorney's fees and costs.

       2.     On February 6, 2015, plaintiff A.D., then an 11-year-old six-grade schoolgirl of color and Hispanic ethnicity, was falsely seized, arrested, physically abused, assaulted, battered, placed in a chokehold around the neck and thrown to the ground by defendant New York Police Lieutenant PAUL GAGLIO, all without lawful cause or justification, while going home from

school, in Bronx County.  A.D. responded affirmatively and peacefully when GAGLIO summoned her to approach him, but GAGLIO physically and suddenly grabbed her by the arm, and roughly pulled and pushed her, frightening her.  He then grabbed her around the neck and threw her to ground, handcuffed her, arrested her and transported her to the 44th Precinct, where she was searched, kept in tight handcuffs, had her personal, private property seized, and was detained for an excessive period of time until her parents could come to the precinct.

      3.      In June 2015, one month after A.D.'s parents filed a Notice of Claim against the CITY in May 2015 in connection with GAGLIO's unlawful conduct, defendants CITY and GAGLIO retaliated against A.D. by commencing and maintaining a juvenile delinquency petition against her, falsely and maliciously charging her with criminal possession of stolen property and resisting arrest.  The juvenile delinquency case was dismissed in December 2015.

      4.      In November 2015, the Civilian Complaint Review Board ["CCRB"] substantiated A.D.'s complaint against GAGLIO for the unjustified use of force against her, finding that GAGLIO wrongfully used a chokehold against her.  The CCRB also found evidence suggesting that GAGLIO provided a false official statement in support of the juvenile delinquency petition earlier commenced by defendants against A.D.  The CCRB recommended to the Police Commissioner that formal disciplinary specifications and charges be commenced against GAGLIO.  Upon information and belief, no such charges have been commenced by the defendant CITY against GAGLIO.

      5.      As a result of defendants' misconduct in this traumatic incident, this child suffered and will continue to suffer physical injury and substantial pain in her wrists and hands from the

tight handcuffing and serious and probably permanent mental and emotional anguish, distress and suffering, loss of enjoyment of life, and special damages.

## JURISDICTION AND VENUE

6. This civil rights action, seeking compensatory damages, punitive damages and attorney's fees and costs, is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution, Article 1, §§ 6, 11 and 12 of the New York State Constitution, and New York state law.

7. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory and constitutional provisions.

8. Plaintiff further invokes the pendent and supplemental jurisdiction of this Court under 28 U.S.C. § 1367 to hear and decide claims arising under state law.

9. Venue is properly laid in this District under 28 U.S.C. § 1391(b), this being the District in which one or more of the defendants resides, and in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

10. Plaintiff A.D. is and was at all times material herein a citizen of the United States and the City and State of New York and Bronx County. At the time of the events leading to this complaint, she was 11 years of age, enrolled in the sixth grade, and a child of color and Hispanic ethnicity. She appears here by her natural mother and next friend, plaintiff J.D.

11.     Plaintiff J.D. and R.D. are and were at all time material herein citizens of the United States and the City and State of New York and Bronx County.  They are the parents of A.D. and are of Hispanic ethnicity.

12.     Defendant THE CITY OF NEW YORK is and was, at all times material herein, a municipal corporation organized and existing under and by virtue of the laws of the State of New York.  The CITY maintained and operated the New York City Police Department ("NYPD"), which acted as the CITY's agent in the area of law enforcement and for which the CITY is and was responsible.  The CITY assumed the risks incidental to the maintenance of a police force and the employment of police officers and lieutenants, as said risks attach to the public consumers of the services provided by the NYPD.

13.     Defendant LT. PAUL GAGLIO, a white male, is and was at all time material herein, employed as a police lieutenant by the defendant CITY, and was a duly appointed, agent, servant and employee of the CITY and the NYPD.  He is being sued in his individual and official capacities.

14.     At all relevant times herein, defendant GAGLIO was acting under color of state law and in the course and scope of his duties and functions as a police lieutenant, and as an agent, servant and employee of the defendant CITY, and otherwise performed and engaged in conduct incidental to the performance of those duties and functions.  At all relevant times herein, defendant GAGLIO was acting for and on behalf of the defendant CITY, with the power and authority vested in him as a police lieutenant and as an agent, servant and employee of the defendant CITY.

## FACTS COMMON TO ALL CLAIMS

15. On or about February 6, 2015, A.D. was a sixth-grade student at the New Millennium Business Academy Middle School, 1000 Teller Avenue, Bronx, New York.

16. When school was over, at approximately 2:20 p.m., A.D. and a schoolmate left to walk a few blocks to a bus stop where she normally took the 35 MTA bus home.

17. On the way, at the intersection of 165th and Clay, they observed some boys from the school throwing snowballs at a passing car.

18. The driver of the car got out to yell at the boys.

19. The driver put one of the boys in a headlock.

20. The driver then chased some of the boys from 165th and Clay to 167th and Clay, in the same direction that A.D. was walking to the bus stop.

21. When A.D. got to 167th and Clay, she saw that the driver had accosted some of the boys.

22. She heard the driver say to give him back his phone or he would call the police, and heard a boy say he did not have the phone.

23. A.D. and her schoolmate were bystanders who had nothing to do with either the snowballs or the phone.

24. A.D. and her schoolmate subsequently observed the police arriving.

25. A.D. and her schoolmate argued about whether to stay and watch or to leave the scene.

26. A.D's schoolmate wanted to stay and watch what happened.

27. A.D. wanted to leave and continue to the bus stop to catch the bus home.

5

28. A.D. called her schoolmate an idiot for being nosey and wanting to stay, and then ran along 167th from Clay toward Teller, toward the bus stop, smiling and laughing, chased by her schoolmate until they approached the intersection of 167th and Teller.

29. After crossing the street, A.D. was accosted by the driver, who demanded that she give him his phone.

30. A.D. told him that she did not have his phone.

31. A.D. was then approached by defendant GAGLIO.

32. As he crossed the intersection of 167th and Teller and approached A.D., defendant GAGLIO and motioned and told her to come to him.

33. A.D. responded peaceably and affirmatively to defendant GAGLIO's direction, by turning toward and stepping back toward him as he continued to approach her.

34. As they got within arm's length of each other, instead of engaging her verbally, or asking her anything, like her name, or about the phone, defendant GAGLIO reached out and forcibly seized and arrested A.D., grabbing her by the arm and pulled and pushed her roughly toward him.

35. Defendant GAGLIO's forcible physical touching, seizure and arrest of A.D. was unreasonable, unnecessary, without legal justification, and unlawful.

36. Defendant GAGLIO did not announce to A.D. that she was under arrest, or what crime(s) or offense(s) for which he was arresting her.

37. A.D. tried to engage defendant GAGLIO in conversation and to protest, telling him to "wait, wait."

38. But defendant GAGLIO was not interested in conversation and did not release A.D.'s arm.

39. Instead, defendant GAGLIO grabbed A.D.'s other arm and with both his hands pushed A.D. backwards, further frightening her.

40. Defendant GAGLIO then grabbed A.D. around the neck and threw her to ground.

41. Defendant GAGLIO then rolled A.D. over on her stomach.

42. Defendant GAGLIO then tightly handcuffed A.D. behind her back, while still on the ground, while her schoolmate and other bystanders watched.

43. This all was totally unnecessary, gratuitous, malicious and unlawful police violence, visited upon an 11-year-old school girl of color by a white police lieutenant.

44. Defendant GAGLIO then roughly picked A.D. up off the ground, put her in a police car, and transported her to the 44th Precinct, where she was searched, kept in tight handcuffs, had her personal, private property seized, and was detained for hours until her parents could come to the precinct.

45. Defendant GAGLIO so tightly handcuffed A.D. that she could feel it against the bones of her wrist.

46. A.D. remained handcuffed for all the hours she was at the precinct except for when she was searched.

47. The tight handcuffs left marks on A.D.'s wrists.

48. A.D.'s arrest was referred to the Family Court's probation department, which supervises an adjustment process.

49. The adjustment process requires a child to attend programs based on the assumption that the child is guilty of the criminal offense for which she has been arrested.

50. Thinking that such punishment was not good for a young child innocent of wrongdoing, J.D. and R.D. declined the adjustment process.

51. Thereafter, for months, the case lay dormant without charges, leading J.D. and R.D. to believe that the prosecutor, from the office of the Corporation Counsel of the defendant CITY, had declined to prosecute.

52. On May 1, 2015, within the required 90-day statutory period, A.D., J.D. and R.D. served a Notice of Claim upon the defendant CITY OF NEW YORK, claiming, *inter alia*, that A.D. was falsely seized, arrested, physically abused, assaulted and battered by a police officer of the defendant CITY.

53. On or about June 8, 2015, defendants CITY and GAGLIO commenced a juvenile delinquency proceeding against A.D. in the Family Court of the State of New York, Bronx County, alleging that she committed the crimes of Criminal Possession of Stolen Property in the Fifth Degree and Resisting Arrest.

54. That proceeding was commenced and maintained falsely and maliciously and without legal justification in order to cover defendant GAGLIO's misconduct and to retaliate against A.D. and her parents for filing the Notice of Claim.

55. In order to convict a child in a juvenile delinquency proceeding for Criminal Possession of Stolen Property in the Fifth Degree in violation of New York Penal Law § 165.40, the defendant CITY must prove beyond a reasonable doubt that such person knowingly possessed

8

stolen property, with intent to benefit herself or a person other than an owner thereof or to impede the recovery by an owner thereof.

56. In order to convict a child in a juvenile delinquency proceeding for Resisting Arrest in violation of New York Penal Law § 205.30, the defendant CITY must prove beyond a reasonable doubt that such person intentionally prevented or attempted to prevent a police officer from effecting an authorized arrest of herself or another person.

57. Defendant GAGLIO's arrest of A.D. for the crime of Criminal Possession of Stolen Property in the Fifth Degree was not an authorized arrest because defendant GAGLIO lacked probable cause to believe that A.D. either possessed the driver's phone or knew that the phone was stolen, or that she had had the intent to benefit herself or a person other than the owner or to impede the recovery by the driver of his phone.

58. Defendant GAGLIO also lacked probable cause to arrest of A.D. for the crime of Resisting Arrest.

59. Juvenile delinquency proceedings are prosecuted by the Corporation Counsel of the City of New York, the same office of the defendant CITY which defends the CITY and its police officers and supervisors against claims of police brutality and other police misconduct.

60. In support of the petition that commenced the juvenile delinquency proceeding, defendant GAGLIO swore to, submitted and caused to be filed a false official statement, in violation of Section 210.45 of the New York Penal Law, a Class A Misdemeanor.

61. Defendant GAGLIO's false statement falsely stated, *inter alia*, that:

(a) both defendant GAGLIO and A.D. slipped on ice on the ground and fell to the ground. In fact, neither defendant GAGLIO nor A.D. had slipped on ice and fallen to

9

the ground; instead, defendant GAGLIO had deliberately grabbed A.D. around the neck and thrown her to ground;

  (b) on the ground, A.D. flailed her arms and thrashed her body, preventing defendant GAGLIO from placing handcuffs on A.D, and that she continued to struggle until he was eventually able to place handcuffs on A.D.  In fact, A.D. did not flail her arms nor thrash her body, nor do anything else to prevent defendant GAGLIO from placing handcuffs on her, nor did A.D. struggle or continue to struggle until defendant GAGLIO was able to place handcuffs on her.

  62. Defendant GAGLIO's interaction with A.D. was almost entirely captured on videotape from a surveillance camera located outside a barbershop near the intersection of 167th and Teller, corroborating the allegations set forth above.

  63. In or about December 2015, the juvenile delinquency proceeding was dismissed by the Criminal Court of the City of New York, Bronx County.

  64. While at the precinct, A.D. learned from a seventh-grade boy also arrested that the driver's phone had fallen out of his pocket during the snowball-throwing incident when the driver came out of his car and placed one of the boys in a headlock, and that another boy had picked up the phone and taken it away from the scene.

  65. Upon information and belief, the police and/or the Office of the Corporation Counsel of defendant CITY subsequently learned the name of the boy who had taken the driver's phone, but never contacted, questioned, arrested or filed a juvenile delinquency petition against him.

66. Plaintiffs subsequently made a complaint to the Civilian Complaint Review Board ("CCRB"), an agency of defendant CITY.

67. On or about November 24, 2015, the CCRB advised plaintiffs that, following its investigation by the CCRB's investigative staff, the Board of the CCRB had reviewed the evidence and made findings substantiating their allegation that defendant GAGLIO had used excessive force against A.D.  In so finding, the Board found that defendant GAGLIO had used a chokehold against A.D.

68. The CCRB also found that "[t]here is evidence suggesting that Lt. Paul GAGLIO provided a false official statement in violation of PG 203-08."

69. PG 203-08 is a provision of the defendant CITY's Police Department Patrol Guide which provides that the intentional making of a false statement is prohibited, and subject to disciplinary action, up to and including dismissal.  The provision further provides that "[i]ntentionally making a false official statement regarding a material matter will result in dismissal from the Department, absent exceptional circumstances." The provision further provides that "[e]xamples of circumstances in which false statements may arise include, but are not limited to, lying under oath during a civil, administrative, or criminal proceeding or in a sworn document"; or in official interviews conducted during investigations by the CCRB.

70. The CCRB Board unanimously recommended that defendant GAGLIO be disciplined for his misconduct with specifications and charges, and forwarded its recommendations to the Police Commissioner and the Police Department Advocate's Office.

71. Upon information and belief, the defendant CITY declined to accept the CCRB recommendations and has failed to impose discipline upon defendant GAGLIO.

72.     The defendant CITY has neglected and failed to adjust the claims within the statutory time period.

## FEDERAL CLAIMS FOR RELIEF

### (42 U.S.C. § 1983)

73.     The acts and conduct described above deprived A.D. of her rights:

    a)     not to be deprived of liberty without due process of law;

    b)     not to be subjected to excessive or unreasonable use of force by police officers;

    c)     to be free from unreasonable search and seizure of her person;

    d)     to be free from false arrest, imprisonment, and unjustified detention;

    e)     not to have false charges lodged against her by police officers;

    f)     to be free of abuse of process;

    g)     to be free from malicious prosecution;

    h)     to fair trial; and

    i)     to speak and associate freely and to seek redress of grievances;

all in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

74.     As a result of the acts and conduct of the defendants complained of herein, plaintiff has suffered deprivation of her liberty, physical injuries, and serious and possibly permanent mental anguish, distress and trauma and mental, psychological and emotional injuries, pain and suffering from the incident and its aftermath, embarrassment, humiliation, shame, indignity, and damages to reputation, and has incurred special damages.

75. The acts and conduct of defendants complained of herein were intentional, wanton, willful and malicious, and in reckless disregard of plaintiff's constitutional rights, thus entitling her to punitive damages.

## CLAIMS FOR RELIEF UNDER STATE LAW

## FALSE ARREST OR IMPRISONMENT

76. The allegations of the preceding paragraphs are incorporated by reference herein.

77. Defendants stopped, detained, arrested and imprisoned A.D. without a warrant.

78. The arrest and imprisonment was therefore presumptively unlawful.

79. Defendants confined A.D., and intended to confine her, without her consent; A.D. was conscious of the confinement, and the confinement was not otherwise privileged.

## ASSAULT

80. The allegations of the preceding paragraphs are incorporated by reference herein.

81. Defendants placed A.D. in apprehension of imminent harmful and offensive bodily contact.

## BATTERY

82. The allegations of the preceding paragraphs are incorporated by reference herein.

83. Defendants made offensive contact with A.D. without privilege or consent.

## ABUSE OF PROCESS

84. The allegations of the preceding paragraphs are incorporated by reference herein.

85. Defendants issued process, and caused such process to be issued, compelling plaintiffs to appear in court and respond to the juvenile delinquency proceeding commenced

against A.D., intending to seek collateral advantage to defendants or corresponding detriment and harm to plaintiffs outside the legitimate ends of the process.

## UNLAWFUL SEARCH

86. The allegations of the preceding paragraphs are incorporated by reference herein.

87. Defendants conducted a search of plaintiff without probable cause, privilege or consent, in violation of plaintiff's right to be free from unreasonable search under Article I, Section 12 of the New York State Constitution.

## FREE SPEECH

88. The allegations of the preceding paragraphs are incorporated by reference herein.

89. Defendants retaliated against A.D. for protesting being assaulted, battered, detained and arrested, and for seeking redress of grievances, in violation of plaintiff's right to freedom of speech and right to petition for redress of grievances under Article I, Section 8 of the New York State Constitution.

90. Defendants further retaliated against plaintiffs for filing a notice of claim and seeking to commence a civil action to recover damages from defendants for their misconduct, in violation of their right to freedom of speech and right to petition for redress of grievances under Article I, Section 8 of the New York State Constitution.

## RESPONDEAT SUPERIOR

91. The allegations of the preceding paragraphs are incorporated by reference herein.

92. Defendant CITY OF NEW YORK is vicariously liable for the acts and omissions of defendant GAGLIO and its other agents, servants and employees who were on duty and acting in the scope of their employment when they engaged in the unlawful conduct set forth above.

**NEGLIGENT SCREENING, HIRING, TRAINING, SUPERVISION AND RETENTION**

93. The allegations of the preceding paragraphs are incorporated by reference herein.

94. Defendant CITY of NEW YORK failed to use reasonable care in the screening, hiring, training, supervision and retention of defendant GAGLIO who participated in the unlawful conduct set forth above.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs A.D. and J.D. demand judgment and pray for the following relief, jointly and severally, against the defendants:

(a) judgment declaring the actions and conduct of defendants unconstitutional and unlawful;

(b) full and fair compensatory damages in an amount to be determined by a jury;

(c) punitive and exemplary damages in an amount to be determined by a jury;

(d) reasonable attorneys' fees and costs and disbursements of this action; and

(e) such other and further relief as appears just and proper.

Dated:   New York, New York
         May 5, 2017

/s/ Robert L. Herbst

Robert L. Herbst (RH 8851)
HERBST LAW PLLC
420 Lexington Ave, Ste 200
New York, New York  10170
(646) 543-2354
rherbst@herbstlawny.com
*Attorneys for Plaintiff*